NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In the Matter of the Estate of:

CAMILLE CLAUDIA FARRELL

Deceased

JESSICA FIEBER, *Personal Representative/Appellee*,

*v.*

HARRISON J. WEISNER, *Appellant*.

No. 1 CA-CV 18-0305
FILED 5-30-2019

Appeal from the Superior Court in Maricopa County
No. PB2012-001584
The Honorable Thomas Marquoit, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Gust Rosenfeld, P.L.C., Phoenix
By Craig L. Keller, Samantha Winter McAlpin
*Counsel for Appellant*

Jennings, Strouss & Salmon, P.L.C., Phoenix
By William A. Clarke, Jordan T. Leavitt
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Judge James P. Beene delivered the decision of the Court, in which Presiding Judge David D. Weinzweig and Judge Kent E. Cattani joined.

---

**B E E N E**, Judge:

¶1          Harrison J. Weisner ("Weisner") appeals the superior court's order approving a final accounting of his mother's estate as prepared by the personal representative, Weisner's sister Jessica Fieber ("Fieber").  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2          When Camille Claudia Farrell died intestate in September 2011, she was survived by two beneficiaries: Fieber and Weisner.  Fieber was appointed the personal representative of the estate in August 2012 with a duty to distribute over $1.1 million in assets ("Farrell Estate").

¶3          In January 2013, Fieber filed a petition for approval of interim accounting and proposed distribution.  Her petition was approved, but Weisner refused to accept distribution of over $600,000.  Weisner did not explain his reasons for refusing, but in November 2016, he objected to the petition and requested appraisal of various items and reassessment of fees and costs.  In May 2017, the parties reached a settlement agreement, which the superior court approved in June 2017 and according to which $25,000 was to be held back to pay final estate fees and costs "not already included in the accountings" ("Holdback Account").  The agreement included a bank account statement with activity ending February 28, 2017.

¶4          In January 2018, Fieber filed a petition requesting that the superior court approve the final accounting of the Holdback Account ("Petition").  This accounting listed charges for attorneys' fees and costs incurred after October 2016.  The Petition was also accompanied by an itemized statement of attorneys' fees and costs totaling $20,225.95, describing work performed from November 1, 2016, through November 30, 2017 ("Rule 33 Statement").  Weisner filed an objection to both the Petition and the Rule 33 Statement.  In March 2018, the court requested Fieber provide a detailed reference chart of all attorneys' fees and costs charged

2

against the Farrell Estate since 2012, which Fieber submitted on March 21, 2018 ("Chart").

¶5 In April 2018, the superior court approved the Petition, denying all of Weisner's objections. Weisner timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

¶6 Weisner argues the superior court abused its discretion when it approved Fieber's request for attorneys' fees and costs as reasonable because 1) the majority of the attorneys' fees were block-billed, rendering the Rule 33 Statement's entries insufficiently detailed and non-compliant with the Arizona Rule of Probate Procedure 33 ("Rule"); and 2) certain fees were double-billed and contained a discrepancy between the Rule 33 Statement and the Petition's final accounting that was not reconciled as mandated by the Rule.

¶7 In a probate litigation, "we review an award of attorney's fees and costs for an abuse of discretion." *In re Guardianship of Sleeth*, 226 Ariz. 171, 174, ¶ 12 (App. 2010) (citation omitted). We will affirm the award "if there is a reasonable basis for doing so." *RS Indus., Inc. v. Candrian*, 240 Ariz. 132, 138, ¶ 21 (App. 2016).

### A. The Court Properly Awarded Attorneys' Fees in Instances of Block-Billing.

¶8 Weisner contends that $15,955 of block-billed fees "prevented both the beneficiaries and the Court from proper scrutiny of the fees," rendering it "impossible to determine the reasonability of the time incurred."

¶9 To approve compensation for a personal representative's attorney, the Rule requires that a petition for fees be accompanied by "a detailed statement of the services provided, including the tasks performed, the date each task was performed, the time expended in performing each task, the name and position of the person who performed each task, and the hourly rate charged for such services," "*[u]nless otherwise ordered by the court.*" Ariz. R. Prob. P. 33(B)(1) (emphasis added). For the hours claimed to be justified, "the fee application must be in sufficient detail to enable the court to assess the reasonableness of the time incurred." *Schweiger v. China Doll Rest., Inc.*, 138 Ariz. 183, 188 (App. 1983). "*Unless otherwise ordered by*

3

*the court*, . . . '[b]lock billing' is not permitted." Ariz. Code of Jud. Admin. ("CJA") § 3-303(D)(2)(c) (emphasis added).[1] "When determining reasonable compensation, the superior court shall follow the statewide fee guidelines set forth in the Arizona code of judicial administration." Ariz. R. Prob. P. 33(F).

¶10      Weisner argues that requests for attorneys' fees are *per se* unreasonable when block billed, but the relevant guidelines recognize the superior court has discretion to award reasonable fees even if block billed, and Arizona courts have rejected the *per se* argument. *See Candrian*, 240 Ariz. at 138, ¶ 21 ("[N]o Arizona authority holds that a court abuses its discretion by awarding fees that have been block-billed."); *see also In re Guardianship of Sleeth*, 226 Ariz. at 178, ¶ 34 (remanding for review of each entry of block-billing to assess whether such entry provided "sufficient detail" to be reasonable). The guideline also mandates that "[e]ach judicial officer shall, pursuant to Rule 33(F) . . . [w]eigh the totality of the circumstances in each case . . . and [] [e]xercise discretion to assign more or less weight to any of the compensation factors as the officer deems just and reasonable." CJA § 3-303(D)(1)(b)-(c).

¶11      Here, the superior court found that, although block-billing occurred, the Rule 33 Statement and the accompanying Chart provided sufficient detail for the court to conclude "the work done was reasonable in accordance with *Sleeth*." The record supports the court's comparison of hours spent with tasks performed. *See In re Guardianship of Sleeth*, 226 Ariz. at 178, ¶ 34 (noting that "when reviewing block-billing, [a] court must compare hours spent with tasks performed to determine reasonableness") (citation omitted). For example, an entry of 5.5 hours dated March 13, 2017, described the work performed as "[t]elephone calls J. Fieber; settlement conference with Commissioner LaBianca; discussions with C. Keller, Esq." Although Weisner argued that the Rule 33 Statement "makes it totally unclear whether 5.3 hours were spent in the settlement conference, 0.1 hours on the telephone with the Personal Representative, and 0.1 hours in discussion with Mr. Keller, or whether 5.3 hours were spent on the telephone with his client, 0.1 in settlement conference, and 0.1 in discussion

---

[1]      The Code of Judicial Administration identifies block-billing "when a timekeeper provides only a total amount of time spent working on multiple tasks, rather than an itemization of the time expended on a specific task." CJA § 3-303(D)(2)(c).

with opposing counsel," the court's minute entry dated March 13, 2017, shows that the hearing lasted 3.9 hours.

¶12 On this record, we cannot say the court abused its discretion. *See Candrian*, 240 Ariz. at 138, ¶ 21.

> **B. The Petition and Rule 33 Statement Were Sufficiently Reconciled and the Record Supports the Court's Finding that No Double-Billing Occurred.**

¶13 Weisner argues the superior court abused its discretion because 1) the attorneys' fees and costs of $21,496.95 requested in the Petition did not match the attorneys' fees and costs of $20,225.95 itemized in the Rule 33 Statement and the Chart; 2) no reconciliation, although mandated by Rule 33(E), was provided; and 3) the court ignored double-billing of $4,985.50.

¶14 Rule 33(E) provides that "[w]hen an attorney or fiduciary fee statement accompanies an annual accounting, the fee statement shall match the charges reported in the annual accounting or a reconciliation of the fee statement to the accounting shall be provided by the fiduciary." Ariz. R. Prob. P. 33(E); *see also Tech. Constr., Inc. v. City of Kingman*, 229 Ariz. 564, 568, ¶ 10 (App. 2012) (noting that courts have a duty to seek any reasonable interpretation that would reconcile documents and give meaning to all their terms); *Rodriguez v. Williams,* 104 Ariz. 280, 283 (1969) (looking "to substance rather than to form" in determining intended effect of pleadings).

¶15 Weisner argues the Chart did not reconcile the Rule 33 Statement with the Petition's final accounting as it merely listed charges incurred since June 2012. The Chart, however, described when charges were billed and paid and that the attorneys' fees continued accruing after the final accounting was closed. Moreover, the final accounting was calculated with a future payment of $1,500 for "Final Attorney Fees," explaining the gap of $1,271 between the fees accounted and billed. The court, however, approved the lesser amount of $20,225.95, effectively foreclosing the remaining $1,271 from being charged against the estate. Although no document titled "Reconciliation" was submitted, the documents, when viewed in tandem, provided the court with a reconciliation sufficient to support its order. *See Rodriguez,* 104 Ariz. at 283.

¶16 Similarly, Weisner contends the superior court excused the double-billing of $4,985.50 in the attorneys' fees charged between November 3, 2016, and January 13, 2017, because these fees were already

paid on January 25, 2017. On March 13, 2017, the court approved the accounting filed on October 24, 2016, and established the Holdback Account for final fees, costs, and expenses "not already included in the accountings," a ruling reflected in Fieber's Petition. The Chart showed that the last two bills included in the previous accounting were dated October 12, 2016, and November 10, 2016. These two bills were paid from a bank account on January 25, 2017, and reflected in the Chart as received on January 31, 2017. The Rule 33 Statement begins with a task performed on November 3, 2016, which the court could have concluded the previous accounting did not include, and therefore was not paid on January 25/January 31, 2017. Because the record does not indicate that counsel billed the client weekly, the November 10, 2016 bill did not likely include services performed on and after November 3, 2016, therefore, the court could have reasonably concluded that no double-billing occurred.[2]

¶17        The superior court acted within its discretion. *See Candrian*, 240 Ariz. at 138, ¶ 21.

### C.    Attorneys' Fees on Appeal.

¶18        Both parties requested we award their attorneys' fees and costs incurred on appeal pursuant to A.R.S. § 12-341.01(A) and the parties' agreement entered by the superior court on June 12, 2017. In our discretion, we award Fieber, the prevailing party, her attorneys' fees and costs upon compliance with Arizona Rule of Civil Appellate Procedure 21.

---

[2]     Weisner also contends the superior court erred because a payment of $4,032.88 to Fieber's attorney does not appear in the Chart. According to the Chart, however, Fieber's attorney billed $3,676.90 on October 12, 2016, and $865.60 on November 10, 2016, totaling $4,542.50. The Chart also indicated a payment applied from the personal representative's law firm's trust account on November 15, 2016 in the amount of $509.62, leaving an amount due of $4,032.88. The Chart further showed two payments received on January 31, 2017; the total amount of those two payments is $4,032.88. The $4,032.88 payment did not appear as part of the Rule 33 Statement because it related to fees incurred prior to November 3, 2016, and was, thus, approved as part of the March 2017 settlement agreement.

**CONCLUSION**

¶19      The superior court's order approving the final accounting is affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA